1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Sean S. Pak (Bar No. 219032 (CA))
2  seanpak@quinnemanuel.com
   Brian E. Mack (Bar No. 275086 (CA))
3  brianmack@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, California 94111
   (415) 875-6600
5  (415) 875-6700 (facsimile)

6  Attorneys for Plaintiff GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| GOOGLE LLC, | CASE NO. 3:17-cv-04600-WHO |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT** |
| vs. | |
| SEVEN NETWORKS, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Google LLC ("Google") seeks a declaratory judgment of non-infringement of United States Patent Nos. 8,078,158, 8,811,952, 9,247,019, 9,325,600, 9,351,254, 9,386,433, 9,444,812, 9,516,127, 9,516,129, and 9,553,816 as follows:

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code. Plaintiff Google Inc. ("Google") requests this relief because Defendant SEVEN Networks, LLC ("SEVEN") has filed lawsuits claiming that Google infringes United States Patent Nos. 8,078,158 ("the '158 patent"), 8,811,952 ("the '952 patent"), 9,247,019 ("the '019 patent"), 9,325,600 ("the '600 patent"), 9,351,254 ("the '254 patent"), 9,386,433 ("the '433 patent"), 9,444,812 ("the '812 patent"), 9,516,127 ("the '127 patent"), 9,516,129 ("the '129 patent"), and 9,553,816 ("the '816 patent") (the "Asserted Patents") by making, using, selling, offering for sale, or importing products and services that infringe one or more claims of the Asserted Patents. (Ex. A.) The accused products and services include features of mobile devices, such as the Pixel, Pixel C, Nexus 5X, and Nexus 6P, the Google Play Store, and Google's "registration and 2-Step Verification process" (collectively, the "Accused Google Products"). SEVEN also alleges that Google contributes to the infringement of its customers and partners by "provid[ing] its Android operating system to companies, such as Samsung, that use the operating system on mobile products" (collectively, the "Accused Third Party Products"). (*Id.* ¶¶ 56, 63, 70, 77, 98, 105, 112.)

2. SEVEN's litigation campaign has placed a cloud on these and other products and services; has accused Google and Google's customers and partners of infringing products and services distributed by Google; and has created a justiciable controversy between Google and SEVEN.

## THE PARTIES

3. Google is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google has provided and provides products and services, including the Accused Google Products.

4. On information and belief, SEVEN Networks, Inc. is the predecessor of Defendant SEVEN Networks, LLC and is the original assignee of the Asserted Patents. On information and belief, SEVEN Networks, Inc. was founded in 2000 and headquartered in Redwood City,

California and/or San Carlos, California at the time the Asserted Patents were filed and being prosecuted. On information and belief, SEVEN Networks, Inc. converted to a Delaware limited liability company, Defendant SEVEN Networks, LLC, in July 2015. (Ex. B at 12.)

5. On information and belief, SEVEN Networks, LLC had its principal place of business and headquarters located in San Carlos, California, which is within this District, until December 2015. On information and belief, SEVEN Networks, LLC opened a small office in Marshall, Texas in the summer of 2015 and moved its headquarters there at the end of 2015. On information and belief, SEVEN Networks, LLC is currently a wholly owned subsidiary of CF SVN LLC, which is a Delaware limited liability company with a registered address of 1209 Orange Street, Wilmington, Delaware 19801. On information and belief, a true and correct copy of SEVEN Network Inc.'s Corporate Structure Tree obtained from S&P Capital IQ, showing the location of SEVEN Network Inc.'s headquarters in San Carlos, California is attached hereto as Exhibit C. Attached as Exhibit D is a true and correct copy of Bloomberg's company snapshot for SEVEN Networks, Inc. showing the location of its headquarters as 959 Skyway Road in San Carlos, California.

## JURISDICTIONAL STATEMENT

6. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

8. This Court has personal jurisdiction over Defendant SEVEN Networks, LLC. Among other things, SEVEN and its predecessors have had continuous and systematic business contacts with California. On information and belief, SEVEN Networks, LLC and its predecessor, SEVEN Networks, Inc., were previously headquartered in this District. Specifically, on information and belief, SEVEN Networks, Inc., the former owner of the Asserted Patents, was founded in 2000 and was headquartered in Redwood City, California and then San Carlos, California, both of which are within this District. On information and belief, SEVEN Networks, Inc. converted to Defendant SEVEN Networks, LLC in July 2015 and was headquartered in San

Carlos, California, which is within this District, until late 2015. On information and belief, in August 2015, Defendant SEVEN opened a small office in Marshall, Texas before officially announcing the relocation of its headquarters to Marshall in December 2015. (Ex. E.)

9. On information and belief, all or nearly all the conception, design, and research and development related to the Asserted Patents occurred in this District during the fifteen years SEVEN was headquartered in this District. On information and belief, none of the conception, design, or research and development related to the Asserted Patents occurred in Texas or after SEVEN moved its headquarters to Marshall, Texas in late 2015. On information and belief, the Asserted Patents were prosecuted while SEVEN Networks, Inc. was headquartered in Redwood City, California and/or San Carlos, California in this District. Many of the patents-in-suit were assigned from SEVEN Networks, Inc. to SEVEN Networks, LLC while both entities were based in California. (Ex. B at 2, 3, 6, and 7.) All of the awards cited by SEVEN in its First Amended Complaint in the Eastern District of Texas occurred while SEVEN was headquartered in this District. (Ex. A ¶ 44.)

10. On information and belief, both members of SEVEN's current "management team"—SEVEN's President and CEO, Dr. Ross Bott, and SEVEN's SVP of Analytics and Market Development, Ari Backholm—who are also SEVEN's only executives, currently reside and work in the Northern District of California. (Exs. F; G; H; I.) On information and belief, the founders of SEVEN Networks, Inc., Bill Nguyen and Trevor Fiatal, still reside in the San Francisco Bay Area within this District. (Exs. J, K.)

11. On information and belief, Fortress Investment Group, LLC ("Fortress") acquired SEVEN Networks, Inc. and formed Defendant SEVEN and its parent company, CF SVN LLC. (Exs. L, M.) On information and belief, in July 2015, Fortress converted SEVEN Networks, Inc. to Defendant SEVEN Networks, LLC. Afterwards, on information and belief, Fortress and/or at least one of the executives of SEVEN decided to move Defendant SEVEN's headquarters to Marshall, Texas. On information and belief, Fortress continues to back and invest in SEVEN. (Exs. N; O at 10-11; P.) On information and belief, SEVEN has also formed obligations with Fortress that relate to the enforcement and/or licensing of the Asserted Patents in this case.

12. On information and belief, Fortress directs and/or participates in SEVEN's enforcement efforts against companies in California. (Exs. L; P; Q.) Fortress, and more specifically its Intellectual Property Finance Group, located in San Francisco, California (Ex. R), markets "[a]sset backed financing alternatives" as a way of monetizing patents, which includes "IP Backed Loans," "Company Acquisition / Corporate Carve-out," and "Monetization Program Finance." (Ex. Q at 6-7.) For "Company Acquisition / Corporate Carve-out" in particular, Fortress outlines the following steps: "Acquire a division or a company with it[s] current operations"; "Control transaction"; "Typically consideration to seller upfront with some share in future upside"; and "Grow company and products with strong emphasis on patent licensing strategies." (*Id.* at 9.) On information and belief, Fortress acquired SEVEN Networks, Inc., or at least SEVEN's patent portfolio, in order to enforce SEVEN's patents against companies in California, similar to Fortress's control over Inventergy's 740-patent portfolio on or around January 2017. (Exs. S; T.)

13. Additionally, at least one of the Managing Directors of Fortress's Intellectual Property Finance Group, Eran Zur, has submitted a declaration in the Eastern District of Texas litigation initiated by SEVEN against Google and voluntarily represented that he is available to testify at the trial in that litigation. (Ex. P.) On information and belief, Mr. Zur is located in this District and works from Fortress's office in this District at One Market Plaza, Spear Tower, 42nd Floor, San Francisco, CA 94105. (Ex. T.) On information and belief, Constantine M. Dakolias is the co-Chief Investment Officer of Credit Funds at Fortress and is also the signatory for the Certificate of Formation for CF SVN LLC, the parent company of SEVEN Networks, LLC. (Exs. L; V.) On information and belief, Eran Zur reports directly to the co-Chairman of Fortress's board of directors, Peter Briger Jr., who also resides and works in this District. (Exs. W; R; X.)

14. On information and belief, Fortress has had continuous and systematic business contacts with California, including on behalf of SEVEN. On information and belief, because SEVEN's entire executive team is located in this District, as well as the Intellectual Property Finance Group at Fortress, decisions regarding SEVEN's essential business activities of the licensing or enforcement of the Asserted Patents are made by individuals residing in this District.

(Exs. O at 15 n.25; R.) On information and belief, in addition to being the home office for Mr. Zur, Fortress's office in this District is also home to another Fortress Managing Director of Intellectual Property Finance Group, Joseph Kessler, as well as its Vice President of the Intellectual Property Finance Group, Yoni Schtein, and co-Chairman of Fortress board of directors, Peter Briger Jr. (Exs. R; P; U; Y; Z; W.)

15. SEVEN has purposefully directed into California licensing and enforcement activities regarding its patents, including the Asserted Patents. On information and belief, SEVEN Networks, LLC or SEVEN Networks, Inc. contacted RPX Corporation, LLC ("RPX"), which is headquartered in San Francisco, California, in December 2014 to license or sell its patent portfolio, which included some of the Asserted Patents. On information and belief, RPX and SEVEN entered into an agreement formalizing their relationship while SEVEN was still headquartered in this District and had a principal place of business at 959 Skyway Road, Suite 100 in San Carlos, California. On information and belief, SEVEN contacted RPX knowing RPX would solicit interest in SEVEN's patent portfolio, including some of the Asserted Patents, from RPX's clients, which included numerous California companies or companies headquartered in California.

16. To this day, SEVEN continues to require counterparties to its contracts, including those that use SEVEN's products that are allegedly "protected" by some of the Asserted Patents (Ex. AA), to submit to the "exclusive jurisdiction" of courts in California, including the Northern District of California. (*See, e.g.*, Ex. BB (SEVEN's "Terms of Use" stating that "You and SEVEN agree to submit to the personal and exclusive jurisdiction of the courts located within the county of San Mateo, California and/or the U.S. District Court for the Northern District of California."); Ex. CC (SEVEN's End User Licensing Agreement ("You consent to the jurisdiction of competent courts in California for the resolution of any dispute arising under or related to this EULA or the Products").)

17. SEVEN Networks, Inc., which, on information and belief, is a predecessor of SEVEN Networks, LLC, and SEVEN Networks International OY, a subsidiary of SEVEN Networks, Inc., have previously litigated in this District, including in *Seven Networks, Inc. v. Visto*

*Corporation*, No. 3:2004-cv-01641; *Seven Networks, Inc. et al. v. Visto Corporation*, No. 3:2006-cv-03650; and *Seven Networks International OY v. Visto Corporation*, No. 5:2007-cv-00783. Accordingly, Defendant SEVEN Networks, LLC, through its own actions and the actions of its predecessor, has purposefully availed itself of the jurisdiction of the Northern District of California, and has submitted to the jurisdiction of this Court on multiple prior occasions.

18. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because a substantial part of the events giving rise to Google's claim occurred in this District, and because SEVEN Networks, LLC is subject to personal jurisdiction here.

19. An immediate, real, and justiciable controversy exists between Google and SEVEN Networks, LLC as to whether Google and its partners are infringing or have infringed the Asserted Patents.

## INTRADISTRICT ASSIGNMENT

20. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a district-wide basis.

## SEVEN'S CAMPAIGN AGAINST GOOGLE AND ITS PARTNERS

21. SEVEN has asserted the '158 patent, the '952 patent, the '019 patent, the '600 patent, the '254 patent, the '433 patent, the '812 patent, the '127 patent, the '129 patent, and the '816 patent against Accused Google Products.

22. On May 17, 2017, SEVEN brought a patent infringement action against Google in the Marshall Division of the United States District Court for the Eastern District of Texas (*see SEVEN Networks, LLC v. Google Inc.*, No. 2:17-CV-00442 (E.D. Tex. filed May 17, 2017)) (the "SEVEN Action").

23. SEVEN alleges that: (1) Google infringes the '158 patent by practicing each claimed step through its Google Play Store, (2) Google infringes the '433 patent by making, using, selling, offering to sell, or importing Google Play Store, (3) Google infringes the '952 patent, the '019 patent, the '600 patent, the '254 patent, the '127 patent, the '129 patent, and the '816 patent by making, using, selling, offering to sell, or importing the Pixel, Pixel C, Nexus 5X, and Nexus

1  6P mobile devices, and (4) Google infringes the '812 patent by practicing each claimed step
2  through its "registration and 2-Step Verification process."

24. Should SEVEN Networks, LLC prevail on its infringement claims in the SEVEN Action, Google would suffer harm, including loss of prospective business relations with its partners and customers and uncertainty surrounding the sale and use of the Accused Google Products. For all these reasons, an actual controversy exists between Google and SEVEN regarding the alleged infringement of any claim of the Asserted Patents by Google and its partners and customers.

**GOOGLE AND ITS PARTNERS DO NOT INFRINGE THE PATENTS-IN-SUIT**

25. The Accused Google Products and the Accused Third Party Products do not directly or indirectly infringe any claim of the Asserted Patents, whether literally or under the doctrine of equivalents.

26. Neither Google nor any manufacturer, seller, or user of the Accused Google Products or the Accused Third Party Products infringes any claim of the Asserted Patents. Google has not caused, directed, requested, induced, contributed to, or facilitated any such infringement, much less with specific intent to do so. The Accused Google Products and the Accused Third Party Products are not designed for use in any combination which infringes any claim of the Asserted Patents. To the contrary, each has substantial uses that do not infringe any claim of the Asserted Patents.

**FIRST CAUSE OF ACTION**

**(Declaration of Non-infringement of the '158 Patent)**

27. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

28. SEVEN claims to own all rights, title, and interest in and under the '158 patent. A true and correct copy of the '158 patent is attached hereto as Exhibit DD.

29. In the SEVEN Action, SEVEN accuses Google of infringing the '158 patent by "practicing every step" of at least claim 10 of the '158 patent through its Google Play Store.

-8-  Case No. 3:17-cv-04600-WHO
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

30. Google does not directly or indirectly infringe the '158 patent, either literally or under the doctrine of equivalents, at least because the Google Play Store does not: (1) responsive to detecting selection of the application made at the mobile device, identify, from the mobile device, user information and the mobile device information of the mobile device; (2) wherein, the user information and mobile device information concerning the mobile device are provided to a network server for use in determining requirements for operating the application on the mobile device; (3) wherein, the user information is stored in device memory or on a SIM card of the mobile device; (4) provision the application on the mobile device based on the requirements for operating the application; and (5) wherein, the requirements for operating the application, specifies components to be installed to provision the application on the mobile device.

31. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Google Play Store infringes the '158 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '158 patent.

32. Google seeks a judgment declaring that Google and the Google Play Store do not directly or indirectly infringe any claim of the '158 patent.

## SECOND COUNT

**(Declaration of Non-infringement of the '952 Patent)**

33. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

34. SEVEN claims to own all rights, title, and interest in and under the '952 patent. A true and correct copy of the '952 patent is attached hereto as Exhibit EE.

35. In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '952 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

36. Google does not directly or indirectly infringe the '952 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not have a processor configured to: (1) exchange transactions with a client operating in a network through a connection provided through a server coupled to the

client; (2) automatically send synchronization requests from the mobile device to the network on a periodic basis; (3) wherein, the periodicity of the synchronization requests occur at a frequency determined according to remaining battery power on the mobile device; and (4) exchange synchronization communications with the client over the connection after sending each synchronization request.

37. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '952 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '952 patent.

38. Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '952 patent.

### THIRD COUNT

### (Declaration of Non-infringement of the '019 Patent)

39. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

40. SEVEN claims to own all rights, title, and interest in and under the '019 patent. A true and correct copy of the '019 patent is attached hereto as Exhibit FF.

41. In the SEVEN Action, SEVEN Networks, LLC accuses the Google Defendants of infringing the '019 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

42. Google does not directly or indirectly infringe the '019 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products are not configured to: (1) delay content requests made by multiple mobile applications; (2) align content requests using observed activity of a user of the mobile device that includes a time since a last key press and mobile device properties; (3) poll in accordance with the aligned content requests to satisfy content requests of at least some of the multiple mobile applications; (4) monitor the time since a last key press, and, when the time

exceeds a predetermined time period, locally adjust the mobile device by suppressing the aligned content requests at the mobile device for a first suppression period, and after expiration of the first suppression period, transmit any aligned content requests; and (5) suppress subsequent content requests at the mobile device for a second suppression period, where the second suppression period is longer than the first suppression period.

43. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '019 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '019 patent.

44. Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '019 patent.

## FOURTH COUNT

### (Declaration of Non-infringement of the '600 Patent)

45. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

46. SEVEN claims to own all rights, title, and interest in and under the '600 patent. A true and correct copy of the '600 patent is attached hereto as Exhibit GG.

47. In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '600 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

48. Google does not directly or indirectly infringe the '600 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and and Accused Third Party Products do not: (1) block a first channel such that network signaling and battery consumption are reduced, wherein the first channel includes a non-common channel; (2) offload application traffic of an application onto a second channel, wherein the second channel includes a common channel; (3) monitor the application traffic of the application over the second channel; (4) unblock the first channel based on the monitored application traffic over the second

1  channel so that the application can perform an action; and (5) re-block the first channel after the action has been completed.

49. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '600 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '600 patent.

50. Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '600 patent.

## FIFTH COUNT

**(Declaration of Non-infringement of the '254 Patent)**

51. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

52. SEVEN claims to own all rights, title, and interest in and under the '254 patent. A true and correct copy of the '254 patent is attached hereto as Exhibit HH.

53. In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '254 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

54. Google does not directly or indirectly infringe the '254 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products are not configured to: (1) acquire a system wakelock in response to an application wakelock acquisition request; (2) detect an activity state of the mobile device based on a status of the display screen; (3) enter a power optimization state based on the detected activity state; (4) release the system wakelock based upon entering the power optimization state when the application that made the acquisition request is not critical to user experience, wherein the application is non-critical when the application is not identified on a whitelist; and (5) acquire the system wakelock in response to a subsequent wakelock acquisition request from another

application on the mobile device when the another application making the subsequent wakelock acquisition request is identified on the whitelist.

55. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '254 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '254 patent.

56. Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '254 patent.

## SIXTH COUNT

### (Declaration of Non-infringement of the '433 Patent)

57. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

58. SEVEN claims to own all rights, title, and interest in and under the '433 patent. A true and correct copy of the '433 patent is attached hereto as Exhibit II.

59. SEVEN accuses Google of infringing the '433 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" the Google Play Store.

60. Google does not directly infringe the '433 patent, either literally or under the doctrine of equivalents, at least because the Google Play Store does not have: (1) a first server communicatively coupled to a mobile device over a mobile network, the first server configured to; (2) receive a unique authentication token from the mobile device over the mobile network, and; (3) provide a service to the mobile device via the mobile network, wherein the service is associated with the unique authentication token and branded by an entity other than an entity that operates the mobile network; (4) wherein the service is provided by: the first server transmitting a list of available digital content stored at the first server to the mobile device, and transferring a representation of at least a portion of the digital content to the mobile device in response to a user selection; (5) a second server configured to monitor usage of the mobile network by the mobile device, the usage related to the service associated with the unique authentication token and

provided to the mobile device by the first server; and (6) wherein the second server is controlled by an entity other than an entity that operates the mobile network.

61. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Google Play Store infringes the '433 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '433 patent.

62. Google seeks a judgment declaring that Google and the Google Play Store do not directly or indirectly infringe any claim of the '433 patent.

## SEVENTH COUNT

### (Declaration of Non-infringement of the '812 Patent)

63. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

64. SEVEN claims to own all rights, title, and interest in and under the '812 patent. A true and correct copy of the '812 patent is attached hereto as Exhibit JJ.

65. In the SEVEN Action, SEVEN accuses Google of infringing the '812 patent by "practicing every step" of at least claim 1 of the '812 patent through its "registration and 2-Step Verification process."

66. Google does not directly or indirectly infringe the '812 patent, either literally or under the doctrine of equivalents, at least because the Google's "registration and 2-Step Verification process" does not: (1) store information associated with a user of a first device on a server, wherein the stored information includes a phone number associated with a second device of the user and is stored during an event; (2) wherein additional information is needed to authenticate the first device to provide a service; (3) query the user for additional information to authenticate the first device to provide the service; (4) wherein the additional information has a length of time in which the additional information is valid; (5) query the user to verify the phone number associated with the second device provided during the event before sending one or more communications associated with providing the service to the first device; and (6) send, based on the stored information and the additional information, the one or more communications to provide the service.

67. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Google's "registration and 2-Step Verification process" infringes the '812 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '812 patent.

68. Google seeks a judgment declaring that Google, Google's "registration and 2-Step Verification process" do not directly or indirectly infringe any claim of the '812 patent.

## EIGHTH COUNT

### (Declaration of Non-infringement of the '127 Patent)

69. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

70. SEVEN claims to own all rights, title, and interest in and under the '127 patent. A true and correct copy of the '127 patent is attached hereto as Exhibit KK.

71. In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '127 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

72. Google does not directly or indirectly infringe the '127 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not: (1) enter a power save mode based on a backlight status and sensed motion of a mobile device; (2) delay a timing of one or more triggers for multiple applications on the mobile device; (3) wherein the timing is delayed such that the triggers execute within a window of time; (4) wherein at least a subset of the triggers are associated with wakelocks; and (5) exit the power save mode when the backlight of the mobile device turns on or motion of the mobile device is sensed.

73. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '127 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '127 patent.

-15-     Case No. 3:17-cv-04600-WHO
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

74.     Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '127 patent.

### NINTH COUNT

**(Declaration of Non-infringement of the '129 Patent)**

75.     Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

76.     SEVEN claims to own all rights, title, and interest in and under the '129 patent. A true and correct copy of the '129 patent is attached hereto as Exhibit LL.

77.     In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '129 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

78.     Google does not directly or indirectly infringe the '129 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not have a processor configured to: (1) enter a first power management mode, wherein to enter the first power management mode is based on input from a user; (2) while in the first power management mode, block transmission of outgoing application data requests for at least one application executing in a background of the mobile device and allow transmission of outgoing application data requests for at least one application executing in a foreground of the mobile device; (3) enter a second power management mode, wherein entry into the second power management mode is based on a detected activity status, wherein the detected activity status is based on a backlight status of the mobile device being off; and (4) while in the second power management mode, block transmission of outgoing application data requests for at least one application executing in background of the mobile device for a predetermined period of time.

79.     A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party

1 | Products infringe the '129 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '129 patent.

80. Google seeks a judgment declaring that the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not directly or indirectly infringe any claim of the '129 patent.

## TENTH COUNT

### (Declaration of Non-infringement of the '816 Patent)

81. Google restates and incorporates by reference the allegations in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

82. SEVEN claims to own all rights, title, and interest in and under the '816 patent. A true and correct copy of the '816 patent is attached hereto as Exhibit MM.

83. In the SEVEN Action, SEVEN accuses the Google Defendants of infringing the '816 patent by "mak[ing], us[ing], sell[ing], offer[ing] to sell, or import[ing]" devices, including the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products.

84. Google does not directly or indirectly infringe the '816 patent, either literally or under the doctrine of equivalents, at least because the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products do not have a processor configured to: (1) determine a time a first application on a mobile device was last accessed; (2) determine whether the first application is inactive based on the time the first application was last accessed; (3) wherein, when the first application is determined to be inactive; (4) adjust behavior of the mobile device for traffic from the first application by blocking outgoing network traffic from the first application for a first period of time and allowing outgoing network traffic from the first application after the first period of time for a second period of time while allowing outgoing network traffic for a second application; (5) receive a message directed towards the first application during the first period of time, wherein the message is received from an intermediary server that provides connectivity between an application server for the first application and the mobile device; (6) allow outgoing network traffic from the first application when mobile the device is plugged into an external power

-17- Case No. 3:17-cv-04600-WHO
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

source; and (7) wherein a frequency of communications directed towards the first application is altered by the adjusting behavior of the mobile device for traffic from the first application.

85. A substantial, immediate, and real controversy therefore exists between Google and SEVEN regarding whether the Pixel, Pixel C, Nexus 5X, Nexus 6P, and Accused Third Party Products infringe the '816 patent. A judicial declaration is appropriate and necessary to determine the parties' respective rights regarding the '816 patent.

86. Google seeks a judgment declaring that the Accused Google Products and Accused Third Party Products do not directly or indirectly infringe any claim of the '816 patent.

## PRAYER FOR RELIEF

WHEREFORE, Google prays for judgment as follows:

A. Declaring that the Accused Google Products and Accused Third Party Products do not infringe, directly or indirectly, the Asserted Patents;

B. Declaring that judgment be entered in favor of Google and against SEVEN on Google's claim;

C. Finding that this is an exceptional case under 35 U.S.C. § 285;

D. Awarding Google its costs and attorneys' fees in connection with this action; and

E. Granting Google such further and additional relief as the Court deems just and proper.

## JURY DEMAND

Google hereby demands a jury trial on all issues and claims so triable.

DATED: November 1, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Sean S. Pak*
Sean S. Pak
Brian E. Mack
*Attorneys for Google LLC*