QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Brian E. Mack (Bar No. 275086)
brianmack@quinnemanuel.com
Jonathan Tse (Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 (facsimile)

Attorneys for Plaintiff Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC | CASE NO. 3:17-cv-04600-WHO |
| Plaintiff, | **GOOGLE LLC'S OPPOSITION TO SEVEN NETWORKS, LLC'S RENEWED MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) OR, IN THE ALTERNATIVE, FIRST TO FILE RULE** |
| v. | |
| SEVEN NETWORKS, LLC | |
| Defendant. | **Judge:** Hon. William H. Orrick |
| | **Date:** December 20, 2017 |
| | **Time:** 2:00 P.M. |
| | **Courtroom:** 2, 17th Floor |
| | **REDACTED VERSION OF DOCUMENT SOUGH TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

ISSUES TO BE DECIDED ............................................................................................1

SUMMARY OF RELEVANT FACTS ...........................................................................2

I.   SEVEN HAS EXTENSIVE CONTACTS WITH CALIFORNIA, WHILE ITS
     CONTACTS WITH TEXAS ARE FEW AND LITIGATION-DRIVEN ............................2

     A.   SEVEN Is Founded In The Northern District Of California And Develops,
          Prosecutes, And Maintains All Of The Patents-In-Suit From Its
          Headquarters Here ...................................................................................................2

     B.   SEVEN Repeatedly Files Patent Actions In This District .........................................3

     C.   SEVEN Engages in Patent Licensing Activities In This District...............................3

     D.   Even After "Moving" Its Headquarters To The Eastern District Of Texas,
          Multiple Senior Executives Of SEVEN Continue To Reside In The
          Northern District Of California ................................................................................4

     E.   SEVEN Owes Obligations To Fortress Investment Group, Which Resides
          In This District And, On Information and Belief, Controls SEVEN's Patent
          Enforcement Efforts ................................................................................................4

II.  GOOGLE'S HOME IS IN THE NORTHERN DISTRICT OF CALIFORNIA AND
     LIKELY WITNESSES IN THIS CASE ARE LOCATED HERE .......................................5

III. NUMEROUS THIRD PARTY WITNESSES RELEVANT TO THIS CASE
     RESIDE IN THE NORTHERN DISTRICT OF CALIFORNIA, WHILE NONE
     RESIDE IN THE EASTERN DISTRICT OF TEXAS .......................................................6

SUMMARY OF RELEVANT PROCEDURAL HISTORY .................................................8

ARGUMENT ..................................................................................................................9

I.   THIS COURT HAS PERSONAL JURISDICTION OVER SEVEN ...................................9

     A.   Legal Standard...........................................................................................................9

     B.   SEVEN Is "Essentially At Home" In California And Thus Subject To
          General Jurisdiction.................................................................................................11

     C.   SEVEN Is Also Subject To Specific Jurisdiction In This District ...........................15

     D.   The Exercise of Personal Jurisdiction Over SEVEN Is Reasonable and Fair..........18

     E.   To The Extent There Is Any Question As To Personal Jurisdiction, The
          Court Should Order Limited Jurisdictional Discovery .............................................18

II.     THE COURT SHOULD NOT DECLINE TO EXERCISE DECLARATORY
JUDGMENT JURISDICTION .......................................................................................20

      A.     Legal Standard...........................................................................................20

      B.     The Forum-Shopping Exception To The First-to-File Rule Applies ......................20

      C.     If The Court Decides To Apply The First-To-File Rule, The Court Should
Stay This Case Pending The Resolution Of The Venue Motions In Texas .............22

CONCLUSION ...............................................................................................................24

# TABLE OF AUTHORITIES*HERE

**Page(s)**

## Cases

*ActiveVideo Networks, Inc. v. Trans Video Electronics, Ltd.*,
  975 F. Supp.2d 1083 (N.D. Cal. 2013) ........................................................ 11, 12

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991)............................................................. 1, 20, 23

*Amerifreight, Inc. v. Belacon Pallet Services, LLC*,
  No. 15-cv-5607, 2015 WL 13037420 (C.D. Cal. Nov. 10, 2014)......................... 23

*ASUSTeK Computer Inc. v. AFTG-TG LLC*,
  No. 11-cv-0192, 2011 WL 6845791 (N.D. Cal. Dec. 29, 2011) ......................... 10

*Autogenomics, Inc. v. Oxford Gene Technology, Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ................................................................ 17

*Avocent Huntsville Corp. v. Aten International Co., Ltd.*,
  552 F.3d 1324 (Fed. Cir. 2008) ..................................................... 11, 17, 18

*British Telecomms. PLC v. McDonnell Douglas Corp.*,
  No. 93-cv-677, 1993 WL 149860 (N.D. Cal. May 3, 1993) ............................. 23

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................ 9

*Calix Networks, Inc. v. Wi-Lan, Inc.*,
  No. 09-cv-6038, 2010 WL 3515759 (N.D. Cal. Sept. 8, 2010) ................ 10, 12, 18

*Celgard, LLC v. SK Innovation Co., Ltd.*,
  817 F.3d 1373 (Fed. Cir. 2015) ................................................................ 10

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ......................................................................... 9, 10

*Delphix Corp. v. Embarcadero Technologies, Inc.*,
  No. 16-cv-606, 2016 WL 4474631 ........................................................ 14, 15

*Elecs. for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) ................................................................ 11

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) ................................................................ 20

*EMC Corp v. Bright Response, LLC*,
  No. 12-cv-2841, 2012 WL 4097707 (N.D. Cal. Sept. 17, 2012) ...................... 22

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................................ 21

*Genentech, Inc. v. GlaxoSmithKline LLC*,
  No. 10-cv-4255, 2010 WL 4923954 (N.D. Cal. Dec. 1, 2010) ......................... 23

*Genetic Veterinary Services, Inc. v. LABOklin Gmbh & Co., KG,*
  No. 17-cv-108, 2017 WL 4638590 (E.D. Va. Oct. 16, 2017) ............................................ 15

*Google Inc. v. Eolas Technologies, Inc.,*
  No. 15-cv-5446, 2016 WL 3346529 (N.D. Cal. June 16, 2016) .................................. 16, 23

*Google Inc. v. Rockstar Consortium U.S. LP,*
  No. 13-cv-5933, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) ......................... 10, 13, 15

*Hertz Corp. v. Friend,*
  559 U.S. 77 (2010) ......................................................................................................... 12, 14

*In re Hoffman-La Roche,*
  587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................. 22

*Inamed Corp. v. Kuzmak,*
  249 F.3d 1356 (Fed. Cir. 2001) ....................................................................................... 10, 17

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) .................................................................................................................. 10

*Intuitive Surgical, Inc. v. Cal. Inst. of Tech,*
  No. 07-cv-63, 2007 WL 1150787 (N.D. Cal. Apr. 18, 2007) ........................................... 23

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) ................................................................................................. 20

*Laub v. U.S. Dep't of the Interior,*
  342 F.3d 1080 (9th Cir. 2003) ............................................................................................... 18

*Lawyers Funding Grp., LLC v. Harris,*
  No. 15-cv-4059, 2015 WL 13298145 (C.D. Cal. Sept. 18, 2015) .................................... 23

*LSI Indus. Inc. v. Hubbell Lighting, Inc.,*
  232 F.3d 1369 (Fed. Cir. 2000) ............................................................................................. 10

*LSI Industries Inc. v. Hubbell Lighting, Inc.,*
  232 F.3d 1369 (Fed. Cir. 2010) ............................................................................................. 18

*Merial Ltd. v. Cipla Ltd.,*
  681 F.3d 1283 (Fed. Cir. 2012) ............................................................................................. 20

*Micron Tech., Inc. v. Mosaid Techs., Inc.,*
  518 F.3d 897 (Fed. Cir. 2008) ......................................................................................... 20, 21

*Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
  328 F.3d 1122 (9th Cir. 2003) ............................................................................................... 18

*Seven Networks Int'l OY, v. Visto Corp.,*
  No. 07-cv-783, Dkt. 47 (N.D. Cal. June 22, 2007) ............................................................. 3

*Silent Drive, Inc. v. Strong Indus., Inc.,*
  326 F.3d 1194 (Fed. Cir. 2003) ............................................................................................. 11

*Thomas & Betts Corp. v. Robroy Indus., Inc.*,
No. 15-cv-4150, 2015 WL 4718892 (C.D. Cal. Aug. 6, 2016) ........................................... 23

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,
395 F.3d 1275 (Fed. Cir. 2005) ...................................................................................... 10

*U.S. v. Rozet*,
183 F.R.D. 662 (N.D. Cal. 1998) ................................................................................... 18

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
848 F.3d 1346 (Fed. Cir. Feb. 15, 2017) ........................................................................ 16

### Statutory Authorities

28 U.S.C. § 1404 ................................................................................................ 8, 19, 20, 22

CAL. CIV. PROC. CODE § 410.10 ........................................................................................ 9

### Rules and Regulations

FED. R. CIV. P. 4(k)(1)(A) .................................................................................................. 9

FED. R. CIV. P. 12(b)(3) ..................................................................................................... 8

FED. R. CIV. P. 45(c)(1) .................................................................................................... 22

Local Rule 3-15 ................................................................................................................. 5

**INTRODUCTION**

Defendant SEVEN Networks, LLC and its predecessor entity SEVEN Networks, Inc. (collectively, "SEVEN") have done business in this District for nearly 20 years. From its foundation here in 2000, to the conception and filing of the patents-in-suit, to its patent enforcement efforts today, SEVEN has, at all relevant times, made this District its home. Indeed, SEVEN's entire management team, including SEVEN President & CEO, Ross Bott, who offered a declaration in support of SEVEN's Motion, lives and works in this District. And on information and belief, SEVEN's owners and investors, who direct and control SEVEN's patent enforcement efforts, reside and conduct business from this District. And not only do these contacts render SEVEN "at home" in this District, they also relate directly to the development and enforcement of the patents-in-suit. On the facts plead in Google's Amended Complaint, there can be no question that SEVEN is at home in this District and that the facts giving rise to the allegations in the Amended Complaint similarly take place here.

Recognizing the weakness of its personal jurisdiction arguments, SEVEN next falls back on the "first-to-file" rule and asks for a dismissal under that doctrine. But the first-to-file rule does not apply where the rule would reward forum shopping and that exception applies here. There is no reason to litigate this case in the Eastern District of Texas as the vast majority of relevant documents and witnesses reside—not in Texas—but in this District. Thus, the first-to-file rule should not apply at all. And even if the first-to-file doctrine did apply, Ninth Circuit precedent mandates that when "there is a pending motion to dismiss" or transfer the earlier filed suit, as is the case here, "it would be inappropriate to dismiss" the later filed case. *See Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628-29 (9th Cir. 1991). Accordingly, SEVEN's motion to dismiss should be denied.

**ISSUES TO BE DECIDED**

1. Whether this Court has personal jurisdiction over SEVEN based on the allegations in the Amended Complaint; and

2. If so, whether this Court should nevertheless decline to exercise that jurisdiction and stay or dismiss this action on the basis of the first-to-file rule.

# SUMMARY OF RELEVANT FACTS

## I. SEVEN HAS EXTENSIVE CONTACTS WITH CALIFORNIA, WHILE ITS CONTACTS WITH TEXAS ARE FEW AND LITIGATION-DRIVEN

### A. SEVEN Is Founded In The Northern District Of California And Develops, Prosecutes, And Maintains All Of The Patents-In-Suit From Its Headquarters Here

SEVEN was founded in San Mateo county in 2000 and was headquartered there until at least December 2015. (Am. Compl., ¶ 8.) From its founding in 2000 to the time of its alleged departure in 2015, SEVEN maintained its headquarters in San Carlos, California and later in Redwood City, California. (*Id.*) From these offices, SEVEN controlled its global operations, developed its (allegedly patented) software, and promoted its company to the world through its website, which prominently listed its "Corporate Headquarters" as "901 Marshall Street Redwood City, CA 94063 USA." (Ex. A.)

In addition to having its corporate headquarters in this District, the purported inventions claimed in the patents-in-suit and the alleged practicing products all stem from work that was largely or exclusively carried out in Northern California. (Am. Compl., ¶ 9.) All of the asserted patents claim priority to applications filed while SEVEN was headquartered in San Mateo county. (Am. Compl., Exs. DD-MM.) And out of the 24 inventors named on the asserted patents, 20 are identified on the patents as being located in the Northern District of California. (Am. Compl., Exs. DD-MM.) Even today, almost all of the named inventors remain in Northern California, including at least named inventors Trevor Fiatal, Scott M. Burke, William Alvarado, Juan Benitez, Michael Luna, Sungwook Yoon, Jay Sutaria, Abhay Nirantar, and Steve Petersen. (Ex. B at 1-28.) And three other named inventors, Ruth Lin, Brian Gustafson, and Robert Paul van Gent, not only reside in the Northern District but currently work at Google. (*Id.* at 29-34.)

SEVEN also developed products here, in this District, that it alleges practices the claims of the patents-in-suit. Specifically, SEVEN alleges that its "Open Channel and AdClear products" "practice one or more of the inventions claimed by the patents-in-suit." (Ex. C at 12.) Open Channel was launched in January 2011, while SEVEN was still headquartered in the Northern District of California. (Ex. D.) AdClear was offered at least by December 2015, the same month that SEVEN

allegedly moved its headquarters from this District to Marshall, Texas. (Ex. E.) And even today, when end users download these alleged practicing products, SEVEN requires that its end users bring any claims against SEVEN in this District. (Am. Compl., ¶16.) For example, SEVEN's Terms of Use for its products states "You and SEVEN agree to submit to the personal and exclusive jurisdiction of the courts located within the county of San Mateo, California and/or the U.S. District Court for the Northern District of California." (Am. Compl., Ex. BB at 4.) Likewise, SEVEN's End User License Agreement states "You consent to the jurisdiction of competent courts in California for the resolution of any dispute arising under or related to this EULA or the Products." (Am. Compl., Ex. CC.)

**B.      SEVEN Repeatedly Files Patent Actions In This District**

Not only has SEVEN conducted business in this District for more than 15 years, developed and patented all of its alleged inventions and practicing products here, and required its end users of these products to litigate here, SEVEN has also availed itself of jurisdiction in this Court on at least three separate occasions. First, on April 27, 2004, SEVEN filed a complaint in this Court seeking a declaratory judgment that it did not infringe certain patents owned by Visto Corporation. (Am. Compl., ¶ 17.) Then more than two years later, on June 8, 2006, SEVEN filed yet another complaint against Visto Corporation, again seeking a declaratory judgment of non-infringement. (*Id.*) Finally, on February 6, 2007, SEVEN filed another declaratory judgment complaint against Visto, this time through one of its subsidiaries, Seven Networks International OY. (*Id.*) When the defendant (Visto) moved to dismiss SEVEN's third complaint for lack of subject matter jurisdiction, SEVEN argued vigorously for its right to bring a declaratory judgment action in the Northern District of California. *See Seven Networks Int'l OY, v. Visto Corp.*, No. 07-cv-783, Dkt. 47 (N.D. Cal. June 22, 2007).

**C.      SEVEN Engages in Patent Licensing Activities In This District**

Not only has SEVEN conducted business in this District for 15 years ***and*** repeatedly filed suit here ***and*** required others to sue here ***and*** developed its alleged inventions here, SEVEN has also, more recently, directed its patent licensing activities to entities within this District. For instance, as recently as December 2014, SEVEN contacted RPX Corporation, LLC ("RPX"), which is headquartered in San Francisco, California in an attempt to license or sell its patent portfolio,

which includes the patents at issue here.  (Am. Compl., ¶15.)  On information and belief, SEVEN knew that RPX would solicit interest in SEVEN's patent portfolio from numerous California companies and companies headquartered in California.  (*Id.*)  On information and belief, SEVEN's management team and/or its owner Fortress Investment Group ("Fortress"), which both reside and conduct business in this District, participated in these negotiations, here, in this District in at least 2014.

**D.     Even After "Moving" Its Headquarters To The Eastern District Of Texas, Multiple Senior Executives Of SEVEN Continue To Reside In The Northern District Of California**

Despite these extensive and ongoing contacts with the Northern District of California, SEVEN now claims to have "moved" its headquarters to Marshall, Texas, which is located in the Eastern District of Texas.  (Mot. at 1.)  SEVEN now alleges that it has nine individuals employed in Marshall, Texas.  (*Id.*)  But SEVEN's entire management team – SEVEN's President and CEO, Dr. Ross Bott, who offered a declaration in support of SEVEN's motion to dismiss, and SEVEN's Chief Technology Officer and named inventor, Ari Backholm – continue to reside and work here, in the Northern District of California.  (Am. Compl., ¶ 10, Exs. F & G.)[1]  And while SEVEN claims to now be headquartered at the Center for Applied Technology in Marshall, Texas, the Center strangely does not list SEVEN in its Directory of Tenants and makes no mention of SEVEN's presence there.  (Ex. F.)  On information and belief, and as discussed in greater detail below, the efforts and decision-makers behind SEVEN's enforcement of the patents-in-suit remain, not in Marshall, Texas, but here in the Northern District of California.

**E.     SEVEN Owes Obligations To Fortress Investment Group, Which Resides In This District And, On Information and Belief, Controls SEVEN's Patent Enforcement Efforts**

In addition to SEVEN's extensive activities detailed above, and the presence of its entire executive team in this District, on information and belief, the entity controlling SEVEN, Fortress Investment Group also resides in this District.  (Am. Compl., ¶¶ 11-14.)  Fortress maintains an office in this District at One Market Plaza, Spear Tower, 42nd Floor, San Francisco, CA 94105.  Fortress,

---

[1]  Dr. Bott's Declaration in Support of SEVEN's Motion to Dismiss tactically makes no mention of the fact that SEVEN's entire management team resides and works in this District.

and more specifically its Intellectual Property Finance Group, markets "[a]sset backed financing alternatives" as a way of monetizing patents, which includes "IP Backed Loans," "Company Acquisition / Corporate Carve-out," and "Monetization Program Finance." (Am. Compl., ¶ 13, Ex. Q at 6-7.) For "Company Acquisition / Corporate Carve-out" in particular, Fortress outlines the following steps: "Acquire a division or a company with it[s] current operations"; "Control transaction"; "Typically consideration to seller upfront with some share in future upside"; and "Grow company and products with strong emphasis on patent licensing strategies." (*Id.* at 9.) On information and belief, Fortress acquired SEVEN, or at least SEVEN's patent portfolio, in order to enforce SEVEN's patents against companies in California, similar to Fortress's control over Inventergy's 740-patent portfolio on or around January 2017. (Am. Compl., ¶ 12, Ex. T.)

Fortress's employees have already played an active role in the litigation between Google and SEVEN. For example, Fortress's Head of its Intellectual Property Finance Group, Eran Zur, has offered a declaration in support of SEVEN's Opposition to Google's Motion to Transfer the Texas action. (Am. Compl., ¶ 13, Ex. P.) Likewise, Fortress's Managing Director, Constantine M. Dakolias, is the sole signatory on the Certificate of Formation for SEVEN's corporate parent, CF SVN LLC. (Am. Compl., ¶ 13, Ex. T.) On information and belief, in addition or in the alternative to acquiring SEVEN, Fortress is also responsible for funding some or all of the costs of both this litigation and parallel infringement litigation in the Eastern District of Texas.[2] (Am. Compl., ¶ 11.)

## II.    GOOGLE'S HOME IS IN THE NORTHERN DISTRICT OF CALIFORNIA AND LIKELY WITNESSES IN THIS CASE ARE LOCATED HERE

Like SEVEN, Google's headquarters have also been continuously located in this District since Google's founding in 1998. In litigation in the Eastern District of Texas, SEVEN has accused Google's products and services, including features and applications (such as Doze and Gmail) found on "mobile devices (such as mobile phones and tablets)," "the Google Play Store," and "Google's 2-Step Verification" of infringing the patents-in-suit (collectively, the "Accused Google Products"). The Accused Google Products are predominantly developed at Google's offices in this District. (Ex.

---

[2] If, as Google believes, Fortress has a financial stake in this litigation, then SEVEN has not disclosed that entity, as required under Local Rule 3-15.

G, ¶10.)  Key employees who work on the Accused Google Products work in those offices.  (*Id.*, ¶¶ 10-13.)  For example, ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  (*Id.*, ¶ 12.)  ████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████.  (*Id.*)

Similarly, ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████  (*Id.,* ¶ 11.)

Further, given that most of the employees with relevant knowledge of the Accused Google Products are based in this District, any hard copies of documents and employee notebooks that might exist would likely be located here.  (*Id.*, ¶¶ 10-13.)   In addition, Google's litigation support team responsible for collecting, reviewing, and producing documents in litigation is also located in this District. (*Id.,* ¶ 11.) ████████████████████████████████████████████ ████████████████████████████████████████████████████████  (*Id.*)

## III.  <u>NUMEROUS THIRD PARTY WITNESSES RELEVANT TO THIS CASE RESIDE IN THE NORTHERN DISTRICT OF CALIFORNIA, WHILE NONE RESIDE IN THE EASTERN DISTRICT OF TEXAS</u>

The majority of known third parties with potentially relevant witnesses and evidence are also located in this District.  In addition to the inventors that no longer work at SEVEN (and do not currently work at Google), SEVEN's original founders, Bill Nguyen and Trevor Fiatal (also a named inventor), currently reside in the Northern District of California. (Am. Compl., ¶10.) Several of SEVEN's other investors, including Greylock and Saints, are headquartered in the Northern District. (Ex. H; *see also* Exs. I & J.)  And presumably meetings with these investors have taken place in the Northern District of California, where SEVEN's entire management team resides.



Google has also identified a range of potentially relevant prior art systems developed in this District.[3] Each of these prior art systems implicates witnesses and evidence residing in Northern California. The Palm operating system (also known as Garnet OS) and its successor the Palm WebOS are a prior art mobile operating systems released by Palm, Inc. of Sunnyvale, California (in the Northern District). (Ex. K.) These operating systems featured powerful power management capabilities and are prior art to the asserted patents. Palm was acquired by Hewlett-Packard, another company based in the Northern District of California.

Apple – another Northern District of California company – may be a source of additional prior art. Apple's iOS, which originally launched in 2007, included power management capabilities and is prior art to at least the some of the asserted patents. Apple Engineering Manager Ray Chang, who was formerly a Senior iOS Power Management Manager, resides in Cupertino, California in the Northern District and likely has pertinent information about Apple iOS's prior art power management capabilities. (Ex. L.)

NVIDIA also possesses potentially relevant prior art and is headquartered in the Northern District. One relevant NVIDIA prior art reference is U.S. Patent No. 9,474,022 to Lin *et al.*, which teaches aligning wakeup events after the mobile device enters into a standby mode in order to reduce power consumption. (Ex. M.) This patent, filed on December 2, 2013, is also prior art to at least the at-issue '254 patent. Many of the inventors, including Liangchuan Mi, Shail Dave, and Karthik Samynathan, currently reside in the Northern District and likely have relevant knowledge regarding this invention. (Ex. N.)

U.S. Pat. App. Pub. 2006/0190616 to Mayerhofer *et al.* describes a content aggregation, delivery and sharing system. (Ex. O.) This patent publication, which was published in August 2006, is prior art to at least the at-issue '433 patent. The first named inventor of this publication, John

---

[3] To the extent that SEVEN argues on Reply that these witnesses and documents are not relevant to the subject matter of Google's Amended Complaint (*i.e.* non-infringement of the patents-in-suit) that argument is incorrect. Testimony and documents regarding the state of the art at the time of invention may, at a minimum, supply extrinsic evidence for use during claim construction.

Mayerhofer, likely has relevant knowledge regarding the system's operation and reduction to practice and currently resides in Northern California. (Ex. P.)

Another company in this District, Vasco, may have prior art relevant to two-factor authentication. Vasco Data Security, Inc. is the current assignee of U.S. Pat. App. Pub. 2003/0204726 to Kefford *et al.*, which discloses a system of sending secured messages based on unique identifier and encryption keys. (Ex. Q.) Vasco likely has relevant documents related to the conception and reduction to practice of the invention described in this publication as well.

## SUMMARY OF RELEVANT PROCEDURAL HISTORY

On May 17, 2017, SEVEN filed suit against Google in the Eastern District of Texas alleging infringement of the patents-in-suit. (Am. Compl., ¶ 22.) Five days later, the Supreme Court handed down its decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC* significantly narrowing the scope of 28 U.S.C. § 1400(b), which governs venue for patent infringement actions. SEVEN did not withdraw its infringement complaint or voluntarily stipulate to transfer to a proper venue for suit. Thus, on August 8, Google moved to dismiss for improper venue under Rule 12(b)(3). *SEVEN Networks, LLC v. Google LLC*, No. 2:17-cv-442 (hereinafter "*SEVEN I*"), Dkt. 25 (E.D. Tex. Aug. 8, 2017). On August 22, SEVEN filed an Amended Complaint in lieu of responding to Google's motion to dismiss. *SEVEN I*, Dkt. 34. SEVEN's Amended Complaint still failed to plead allegations consistent with a finding that venue was proper in the Eastern District of Texas. Therefore, on September 12, Google renewed its Rule 12(b)(3) motion to dismiss and once again demonstrated the insufficiency of SEVEN's venue allegations. *SEVEN I*, Dkt. 49. Regarding the appropriate remedy, Google requested that the Texas Court either dismiss that action or transfer it to this District. Briefing on that motion closed on November 2 and the issue is ripe for resolution by the Texas Court.

In addition to moving to dismiss for improper venue, Google has also moved to transfer the Eastern District of Texas case under 28 U.S.C. § 1404. (Ex. S.) As Google explained in that motion (and reiterated above), none of the relevant witnesses or documents are located in the Eastern District of Texas, while most are located in this District and thus, to the extent SEVEN could even show that venue is not improper, it would still be inconvenient to an extent requiring transfer. In

opposing that motion, SEVEN admitted that its claims against Google could have been brought in this District. (Ex. R at 1 ("Google is correct that this case could have been brought in the Northern District of California.").) Briefing on that motion has also closed and it will likewise be decided soon.

Google filed its Complaint in this action on August 10 seeking a declaratory judgment that the patents SEVEN accuses it of infringing are, in fact, not infringed. Dkt. 1. On October 11, 2017, SEVEN moved to dismiss for lack of personal jurisdiction or under the first-to-file doctrine. Dkt. 34. Google amended its Complaint on November 1 to allege additional jurisdictional facts. Dkt. 44. Undeterred, on November 15, SEVEN renewed its Motion with only minimal changes. Dkt. 48. SEVEN's Motion fails for the reasons set forth below.

## ARGUMENT

## I. THIS COURT HAS PERSONAL JURISDICTION OVER SEVEN

### A. Legal Standard

There are two requirements for a Court's exercise of personal jurisdiction: a statute must authorize that exercise and such an exercise must comport with due process. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Federal Rule of Civil Procedure 4(k)(1)(A) instructs federal courts to follow the forum state's long-arm statute. In California, courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." CAL. CIV. PROC. CODE § 410.10. Accordingly, the personal jurisdiction analysis collapses into the due process inquiry.

Under the Due Process Clause, the "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. *Daimler*, 134 S. Ct. at 754. General jurisdiction requires "continuous and systematic" contacts that render the defendant essentially at home in the forum state. *Id.* "Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of

each case to make such a determination." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Thus, while a corporation's place of incorporation and principal place of business are "paradigm bases for general jurisdiction" the Supreme Court has expressly rejected the notion that general jurisdiction would lie only in those fora. *Daimler,* 134 S. Ct. at 760. In a declaratory judgment action for patent non-infringement, "forum-directed activities beyond those relating to enforcement or defense of the patents-in-suit may in the aggregate justify the exercise of general jurisdiction." *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-6038, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (quotations and citations omitted).

Specific jurisdiction "exists where the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic." *ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 11-cv-0192, 2011 WL 6845791, at *5 (N.D. Cal. Dec. 29, 2011) (citing *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005)). For specific jurisdiction, the Federal Circuit applies the following three-part test: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innovation Co., Ltd.*, 817 F.3d 1373, 1377 (Fed. Cir. 2015). "The first two factors correspond with the 'minimum contacts' prong of *International Shoe*, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* at 1378 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

Specific jurisdiction can be satisfied by many types of conduct and, in contrast to general jurisdiction, can arise out of one or only a few contacts. For example, specific jurisdiction can exist where a defendant patentee owes enforcement obligations to a forum resident. *Google Inc. v. Rockstar Consortium U.S. LP,* No. 13-cv-5933, 2014 WL 1571807, at *8 (N.D. Cal. Apr. 17, 2014) ("Defendants have created continuing obligations with a forum resident to marshal the asserted patents such that it would not be unreasonable to require Defendants to submit to the burdens of litigation in this forum."). A patentee's prior lawsuits in a district likewise support a finding of personal jurisdiction. *ActiveVideo Networks, Inc. v. Trans Video Electronics, Ltd.*, 975 F. Supp.2d

1083, 1097 (N.D. Cal. 2013) (denying motion to dismiss for lack of personal jurisdiction and rejecting patentee's arguments that prior lawsuits were "too old" to count).

At the motion to dismiss stage, the Court must construe all pleadings and affidavits "in the light most favorable to [plaintiff]" and "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). While the plaintiff bears the burden of demonstrating the first two prongs (*i.e.,* that minimum contacts exist), a plaintiff's burden with respect to the first two prongs is only a prima facie burden. *Avocent*, 552 F.3d at 1329. The defendant then bears the burden of disproving that the exercise of jurisdiction is reasonable and fair. *See id.* at 1331. This burden is a heavy one. *See Inamed*, 249 F.3d at 1363-64.

## B. SEVEN Is "Essentially At Home" In California And Thus Subject To General Jurisdiction

SEVEN's contacts with this state are "consistent and systematic" such that it is "essentially at home" here and the exercise of general jurisdiction is appropriate.[4] SEVEN's ties to this District are longstanding and, even today, after its alleged move to the Eastern District of Texas, decisions regarding SEVEN's business operations (including its patent enforcement efforts central to this case) continue to be made here by individuals in this District at Fortress and at SEVEN that are controlling the litigation.

SEVEN was founded in this District in 2000 and, for nearly two decades thereafter, has continuously engaged in business here. All of the purported inventions claimed in the patents-in-suit and alleged to be practiced by certain SEVEN products would have stemmed from work that was largely or exclusively carried out in this District. And all of the asserted patents claim priority to applications filed while SEVEN was headquartered in San Mateo county. Indeed, out of the 24

---

[4] As mentioned above, in its parallel infringement case, SEVEN agreed that its infringement claims could have been brought in this District. (Ex. R ("Google is correct that this case could have been brought in the Northern District of California.").) This coupled with the extensive ties detailed here and in Google's Amended Complaint supports the exercise of general jurisdiction.

inventors named on the patents-in-suit, 20 of them are identified by the patents as living within this District. And, even today, after its alleged move to the Eastern District of Texas, SEVEN's entire management team, CEO, Ross Bott, and CTO, Ari Backholm, live and work here in this District. SEVEN's principal place of business has been, and remains, here, in this District. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (holding, in the context of diversity jurisdiction, that an entity's "principal place of business" is the "nerve center . . . where a corporation's officers direct, control, and coordinate the cooperation's activities").

SEVEN has also historically filed suit in this District alleging causes of action related to patent infringement allegations. *Supra* Fact Section I.B. SEVEN argues that these cases are "irrelevant" to the jurisdictional analysis because they concerned patents other than the ones at issue in this lawsuit. (Mot. at 8-9.) But SEVEN fails to cite even a single case that would suggest that they are irrelevant to the question of general jurisdiction, which looks holistically at a party's ties to the forum rather than specific activities. *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-6038, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (holding that "forum-directed activities beyond those relating to enforcement or defense of the patents-in-suit" are relevant to the general jurisdiction analysis in a declaratory judgment action) (quotations and citations omitted). Rather, SEVEN's decision to repeatedly invoke this Court's jurisdiction to defend against patent infringement claims makes it all the more appropriate for it to be subject to jurisdiction here now that it is the one asserting patents. *See ActiveVideo*, 975 F. Supp.2d at 1097 (denying motion to dismiss for lack of personal jurisdiction and rejecting patentee's arguments that prior lawsuits were "too old" to count).

Nor are SEVEN's ties to this District purely historical. As mentioned, SEVEN's entire management team resides in this District, as does Fortress, the entity that, on information and belief, is controlling and/or funding SEVEN's patent enforcement campaign. On information and belief, decisions regarding this enforcement campaign have been made here by individuals at Fortress and at SEVEN that reside and work in this District. In particular, SEVEN's President and CEO, Ross Bott, who is presumably a decision maker regarding SEVEN's patent licensing activities and patent infringement litigation, lives and works in this District. SEVEN's current obligations to Fortress, which resides in this District, likewise directly relate to the monetization and enforcement of the

patents-in-suit. On information and belief, Fortress acquired SEVEN and is now directing and participating in its patent litigation efforts both here and in Texas. (Am. Compl. ¶12.) Fortress's public statements reflect that it has a business model of acquiring companies with large patent portfolios and then using them as vehicles for patent infringement campaigns. (*Id.*) Employees of Fortress who are responsible for these efforts live in this District. (Am. Compl., ¶13.) Indeed, Eran Zur, one of the Managing Directors of Fortress's Intellectual Property Group, has submitted a declaration in support of SEVEN's opposition to Google's motion to transfer the Texas litigation. (Am. Compl., ¶ 13, Ex. P.) On information and belief, Mr. Zur is located in this District and works from Fortress's office in this District at One Market Plaza, Spear Tower, 42nd Floor, San Francisco, CA 94105. (Am. Compl., ¶13.) Likewise, Fortress's co-Chief Investment Officer, is a signatory on the Certificate of Formation that created SEVEN's nominal corporate parent, CF SVN LLC. (*Id.*) And SEVEN's obligations to Fortress provide yet another fact in support of a finding of general jurisdiction. *Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933, 2014 WL 1571807, at *7 (N.D. Cal. Apr. 17, 2014) ("Defendants have created continuing obligations with a forum resident to marshal the asserted patents such that it would not be unreasonable to require Defendants to submit to the burdens of litigation in this forum").

SEVEN has also, as recently as late 2014 and possibly at the direction of Fortress, visited RPX, a patent acquisition and licensing entity, and negotiated with that entity in an effort to license or sell some or all of its patent portfolio. (Am. Compl., ¶ 15.) RPX is headquartered in San Francisco and negotiations with RPX presumably took place in this District. (*Id.*) On information and belief, SEVEN contacted RPX knowing RPX would solicit interest in SEVEN's patent portfolio, including some of the Asserted Patents, from RPX's clients, which included numerous California companies or companies headquartered in California. (*Id.*) These negotiations further support a finding that SEVEN is "essentially at home" in this District.

Finally, even after its alleged move to Marshall, Texas, SEVEN's agreements with its end users continue to require that any claims relating to SEVEN's allegedly practicing products be litigated in this District, to the exclusion of all others. (Am. Compl., ¶ 16.) Indeed, SEVEN's "Terms of Use" expressly state that the end user is subject to "***personal and exclusive jurisdiction***"

in the court for the Northern District of California and/or San Mateo county. (Am. Compl., Ex. BB at 4.) Dr. Bott's declaration in support of SEVEN's Motion to Dismiss tactically omits any discussion of (a) his current work place and his current residence, (b) the work performed by him and any other SEVEN employees (including SEVEN's CTO, Ari Backholm) that reside within the District, (c) his and Fortress's role in directing SEVEN's patent enforcement and licensing efforts, and (d) the agreements that SEVEN has with its end users that require claims to be heard exclusively in this District. Dr. Bott omits (or at a minimum fails to address) these facts because they presumably demonstrate the breadth of SEVEN's connections to this District even after its alleged "move" to Marshall, Texas.

At bottom, the facts pled in Google's Amended Complaint (and never challenged by SEVEN) show that SEVEN has a longstanding presence in this District and that all of the entities and individuals responsible for SEVEN's management and operations (including its patent enforcement efforts) reside and work here, in this District. The Northern District is SEVEN's "nerve center," despite its claims of an office and a small number of employees in Texas. *Hertz*, 559 U.S. at 93 (distinguishing an entity's "nerve center" where "officers direct control, and coordinate the corporation's activities" from "an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)"). SEVEN's business and patent enforcement contacts with this District are the exact kinds of "systematic" and "continuous" contacts meriting the application of general jurisdiction.

In arguing against the application of general jurisdiction, SEVEN relies almost exclusively on *Delphix Corp. v. Embarcadero Technologies, Inc.* (Mot. at 6-7.) But that case concerned a declaratory judgment trademark claim involving an entirely different set of facts than those at issue here. In *Delphix*, the defendant affirmatively put forth evidence showing that "of a total of 324 employees, approximately 37 worked in California" which amounted to "only about 11.5%" of the defendant's total work force. No. 16-cv-606, 2016 WL 4474631, at *6 (N.D. Cal. Aug. 25, 2016), *appeal pending,* No. 16-16572 (9th Cir.). Moreover, the *Delphix* court also found that there was no "nexus" between the allegations of the declaratory judgment trademark claims and the defendant's contacts with California. *Id.,* at *7. In contrast, SEVEN's entire management team resides and

works in this District and, on information and belief, the entity and individuals that SEVEN owes patent enforcement obligations to (*i.e.,* Fortress) also reside and conduct business in this District. And, unlike the lack of nexus in *Delphix*, all of the alleged inventions claimed in the patents-in-suit were conceived of, prosecuted, and allegedly implemented in products here, in this District. As were decisions about who and how to assert the patents-in-suit against. At bottom, the facts alleged in *Delphix* look nothing like those at issue here.

In closing, SEVEN's activities in this District are just the kind of "systematic and continuous" contacts that render this District "essentially home" for SEVEN, and SEVEN's motion to dismiss for lack of personal jurisdiction should be denied. *Genetic Veterinary Services, Inc. v. LABOklin Gmbh & Co., KG*, No. 17-cv-108, 2017 WL 4638590, at \*4 (E.D. Va. Oct. 16, 2017) (finding that commercialization efforts in forum combined with enforcement obligations to in-forum entities rendered defendant patentee subject to personal jurisdiction).

## C. <u>SEVEN Is Also Subject To Specific Jurisdiction In This District</u>

In addition to being subject to the Court's general jurisdiction, SEVEN is also subject to specific jurisdiction due to the activities that took place and continue to take place within this District that give rise to the causes of action at issue in Google's Amended Complaint. Three potential grounds supply the appropriate underpinnings for the application of specific jurisdiction.

***First***, SEVEN has substantial patent enforcement obligations to Fortress, an entity with an office and multiple employees in this District. As alleged in Google's Amended Complaint, on information and belief, Fortress is controlling and funding SEVEN's patent litigation campaign against Google and its affiliates. (Am. Compl., ¶¶ 11-14.) On information and belief, the decision as to whether and who to assert the patents-in-suit against was made by Fortress and SEVEN's management team, both of whom reside and work in this District. (Am. Compl., ¶¶ 12-13.) On information and belief, decisions regarding the prosecution of that patent enforcement effort were and continue to be made here, in the Northern District of California. (*Id.*) SEVEN accordingly owes the type of obligations to Fortress that provide a basis for the exercise of specific personal jurisdiction and these facts alone supply a sufficient basis for the application of specific personal jurisdiction. *Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933, 2014 WL 1571807, at

*7 (N.D. Cal. Apr. 17, 2014) (denying motion to dismiss and finding specific personal jurisdiction where "Defendants have created continuing obligations with a forum resident to marshal the asserted patents such that it would not be unreasonable to require Defendants to submit to the burdens of litigation in this forum"); *Google Inc. v. Eolas Technologies, Inc.*, No. 15-cv-5446, 2016 WL 3346529, at *6-7 (N.D. Cal. June 16, 2016) (denying motion to dismiss and finding specific personal jurisdiction where enforcement obligations between the defendant and an in-forum entity existed).

**Second,** SEVEN's licensing activities in this District, coupled with the fact that the employees presiding over those efforts reside here, support the application of specific personal jurisdiction. *Supra* Argument Section I.B. As recently as December 2014, SEVEN contacted RPX, which is headquartered in this District in an attempt to license or sell its patent portfolio, which includes the patents-in-suit. (Am. Compl., ¶ 15.) Any negotiations with RPX likely involved Ross Bott, SEVEN's CEO and President, who resides and works in this District. (Am. Compl., ¶¶ 10, 15.) SEVEN also presumably knew that RPX would solicit interest in SEVEN's patent portfolio from numerous California companies and companies headquartered in California. (Am. Compl., ¶ 15.) These contacts separately provide a basis for the application of specific personal jurisdiction. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. Feb. 15, 2017) (finding specific personal jurisdiction and holding "[t]his court has previously recognized that in-person visits to the forum [for licensing negotiations] are significant contacts in the declaratory judgment context.").

**Third,** SEVEN's development of the alleged inventions claimed in the asserted patents renders it subject to specific jurisdiction here. (Am. Compl., ¶ 9.) As stated above, all of the purported inventions claimed in the patents-in-suit and alleged to be practiced in this District by certain SEVEN products would have stemmed from work that was largely or exclusively carried out in this District. And all of the asserted patents claim priority to applications filed while SEVEN was headquartered in San Mateo county. Indeed, out of the 24 inventors named on the patents-in-suit, 20 of them are identified by the patents as living within this District. SEVEN also alleges that its "Open Channel and AdClear products" "practice one or more of the inventions claimed by the patents-in-suit." (Ex. C.) Open Channel was launched in January 2011, while SEVEN was still

headquartered in the Northern District of California. (Ex. D.) AdClear was offered at least by December 2015, the same month that SEVEN allegedly moved its headquarters from this District to rural Marshall, Texas. (Ex. E.) And, as stated above, SEVEN's Terms of Use and End User License Agreements continue to require that any claims related to these allegedly practicing products be litigated ***exclusively in this District***.

Finally, to the extent that SEVEN relies on *Autogenomics, Inc. v. Oxford Gene Technology, Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) and *Avocent Huntsville Corp. v. Aten International Co., Ltd.*, 552 F.3d 1324 (Fed. Cir. 2008), those cases bear almost no resemblance to the facts of this case. In *Avocent*, the plaintiff sought a declaratory judgment of non-infringement against a ***Taiwanese*** company in the Northern District of Alabama alleging only that the patentee had sent three cease-and-desist letters to entities around the entire United States that sold the accused products. *Avocent*, 552 F.3d at 1326-28. The Federal Circuit, unsurprisingly found that these facts were insufficient to support the exercise of personal jurisdiction.[5] Likewise, in *Autogenomics*, the declaratory judgment plaintiff filed suit against a ***British*** patentee in the Central District of California. *Autogenomics*, 566 F.3d at 1014. The plaintiff in that case alleged only sporadic contacts with the Central District such as one licensing negotiation and a joint development agreement that had nothing to do with any patents, much less the ones at issue. *Id.* In contrast to these cases where a foreign defendant had almost no connection to the forum, Google has alleged not only that SEVEN was founded in this District and conducted business here for nearly twenty years and developed, maintained, and allegedly implemented in its products the patents-in-suit in this District but has also alleged specific enforcement obligations related to the patents-in-suit that run to residents of this forum.

---

[5] If anything, the Federal Circuit's holding in *Avocent* appears to support Google's arguments above for general jurisdiction. *See e.g., id.* at 1336 ("Thus, we hold that such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee. While ***such activities may in the aggregate justify the exercise of general jurisdiction over the patentee***, they do not establish a basis for specific jurisdiction in this context.") (emphasis added).

**D.**     **The Exercise of Personal Jurisdiction Over SEVEN Is Reasonable and Fair**

The last prong of personal jurisdiction asks "whether assertion of personal jurisdiction is 'reasonable and fair.'" *E.g.*, *Inamed*, 249 F.3d at 1360. While SEVEN argues against the application of general and specific jurisdiction, it does not address this portion of the analysis at all, despite the fact that SEVEN, not Google, bears the burden as to this portion of the analysis. *Avocent*, 552 F.3d at 1329. Having failed to put forth any argument as to this portion of the personal jurisdiction analysis in its Motion SEVEN has waived its ability to argue that the exercise of jurisdiction here would be unfair or unreasonable. *U.S. v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998) ("Legal issues raised for the first time in reply briefs are waived.") In any event, as Google demonstrated above, SEVEN's extensive contacts with this jurisdiction, coupled with the fact that almost all party and non-party witnesses reside in this District, renders it clear that the exercise of personal jurisdiction would be both fair and reasonable here.

**E.**     **To The Extent There Is Any Question As To Personal Jurisdiction, The Court Should Order Limited Jurisdictional Discovery**

Should the Court determine that there is any question as to the Court's ability to exercise personal jurisdiction over SEVEN, Google respectfully requests that the Court order jurisdictional discovery. "[C]ourts in this district have held that a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-06038, 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010). In the Ninth Circuit, jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.,* at *3 (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080 (9th Cir. 2003)). Indeed, at least one court in this District has held that "it may be an abuse of discretion for a court to deny jurisdictional discovery where such discovery *might* well demonstrate jurisdictionally relevant facts and the plaintiff is denied the opportunity to develop the jurisdictional record." *Id.* (citing *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003)) (emphasis in original). While there is no specific test for jurisdictional discovery, the facts of each case control

and such discovery is appropriate to analyze whether a defendant's forum contacts are "continuous and systematic." *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2010).

Google has pled numerous uncontroverted facts in support of its jurisdictional allegations. In contrast, SEVEN's Motion to Dismiss has taken a defensive posture, offering almost no facts in response to Google's allegations and seeking only a dismissal on abstract legal arguments. SEVEN's President and CEO submitted a declaration in connection with SEVEN's Motion to Dismiss that failed to disclose the fact that both he and his CTO, who make up SEVEN's entire executive team, reside within the Northern District of California. Nor has SEVEN put forth any response to Google's allegation regarding SEVEN's investors at Fortress, who control the litigation, in this District, which SEVEN tactically omitted from its L.R. 3-15 disclosures. Indeed, SEVEN's Motion fails to put forth any of the evidence that a party claiming to have no ties to this District should readily be able to provide. This lack of candor supports permitting Google to take discovery into SEVEN's jurisdictional presence in this District.[6] In particular, Google would respectfully request discovery on, at a minimum, (1) the location of SEVEN's employees, (2) the agreement(s) between SEVEN and Fortress relating to the enforcement of the patents-in-suit, (3) the nature and extent of SEVEN's negotiations with RPX regarding the license or sale of the patents-in-suit, and (4) the extent to which corporate and licensing decision-making and control occurs in the Northern District, and (5) SEVEN's other contacts with its investors that reside in the Northern District. Discovery on these categories would disclose facts further supporting Google's claims of both general and specific personal jurisdiction and, to the extent the Court finds that there is any question as to jurisdiction, Google should be allowed to seek this discovery in lieu of dismissal.

---

[6] SEVEN's tactical decision to put forth almost no evidence on these points stands in stark contrast to Google's extensive efforts in the Eastern District of Texas litigation showing that venue is improper there. When Google moved to dismiss for lack of venue in that case, it submitted 7 employee declarations and 26 exhibits detailing Google's lack of any regular and established place of business in that district. *SEVEN I,* Dkt. 49. Likewise, when Google filed its motion to transfer under 28 U.S.C. § 1404 in that case, Google submitted another employee declaration and more than 50 exhibits supporting its arguments. *SEVEN I*, Dkt. 61. In both that case and here, Google has taken extensive efforts to demonstrate the fulsomeness of its claims, while SEVEN has not.

## II. THE COURT SHOULD NOT DECLINE TO EXERCISE DECLARATORY JUDGMENT JURISDICTION

Recognizing the weakness of its personal jurisdiction arguments, SEVEN also argues for a dismissal based on the first-to-file doctrine. But that doctrine is not as rigid as SEVEN presents it and instead includes an exception intended to prevent the sort of forum shopping at issue here.

### A. Legal Standard

SEVEN's motion assumes that dismissal of this case is automatic once the threshold requirements of the first-to-file rule—the chronology of the two actions, the similarity of the parties, and the similarity of the issues—are satisfied. But that is incorrect. The Federal Circuit, whose law applies to the application of this doctrine, has repeatedly stated that "there are exceptions and the rule is not rigidly or mechanically applied." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-47 (Fed. Cir. 2005). Indeed, "[t]he trial courts have discretion to make exceptions to this general [first-to-file] rule in the interest of justice or expediency, as in any issue of choice of forum." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). Such "exceptions are not rare" and are guided by the convenience factors under 28 U.S.C. § 1404(a). *Id.* "[R]obust consideration of these factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum." *Id.* at 905. Accordingly, "circumstances under which an exception to the first-to-file rule typically will be made include . . . forum shopping." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

### B. The Forum-Shopping Exception To The First-to-File Rule Applies

Even if the threshold requirements to the first-to-file rule were satisfied, the Court should exercise discretion, considering the convenience factors derived from § 1404(a), to retain this case under the forum-shopping exception. The convenience factors are: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel

attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).[7]  These factors weigh heavily in Google's favor.

As is true in most patent infringement cases, the majority of the sources of proof in this case will come from the alleged infringer, Google. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).   The fact that Google is headquartered in this District and conducts numerous activities relevant to this litigation out of its headquarters here shows the convenience of keeping this case in this Court at least under factors 4 (the parties' contacts with the forum), 5 (the contacts relating to Google's cause of action in this District), 6 (the differences in the costs of litigation in the two forums), and 8 (the ease of access to sources of proof).  Google develops and maintains the Accused Google Products in large part at its headquarters in the Northern District, and Google employee witnesses (including those detailed in Fact Section II) with knowledge of technical aspects of the Accused Google Products predominantly work and reside in the Northern District.   (Ex. G.) Similarly, Google employee witnesses with knowledge of marketing concerning the Accused Google Products (including those detailed in Fact Section II) are also primarily based in the Northern District.  By contrast, Google is aware of no employee having potentially relevant knowledge in Texas.  And Google has no facilities in the Eastern District of Texas.  A trial in this District would be far more convenient for Google's witnesses, who would face a real and avoidable burden should they be required to travel away from this District for a trial in the Texas action.

Further, the presence of numerous likely third-party witnesses in this District and none in Texas results in at least factors 6 (the differences in the costs of litigation in the two forums), 7 (the availability of compulsory process to compel attendance of third-party witnesses), and 8 (the ease of access to sources of proof) weighing heavily in favor of keeping this case here.  *Genentech*, 566 F.3d at 1343 ("The convenience of the witnesses is probably the single most important factor in transfer analysis."); *id.* at 1345 ("The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly.").  As detailed above in Fact Section

---

[7]  Google's motion to transfer the Texas action to this district, filed on September 12, 2017 in the Eastern District of Texas, provides a more detailed analysis of the § 1404(a) factors.  (Ex. S.)

III, numerous prior art witnesses, SEVEN investors, and named inventors on the patents-in-suit reside in this District.

By contrast, Google is not aware of any non-party witnesses with relevant knowledge who reside or work in the Eastern District of Texas. Whether the numerous third-party witnesses listed above in Fact Section III end up being willing or unwilling witnesses, it will be more convenient and less costly for the witnesses and for the parties to litigate any alleged infringement of the patents-in-suit in this Court: If these witnesses are willing, it is more convenient for them to attend trial here, as there is no need for significant travel away from home. If these witnesses are unwilling, only this Court may compel them to attend a trial. FED. R. CIV. P. 45(c)(1).

Additionally, because the inventions claimed in the asserted patents were allegedly conceived here and SEVEN's allegations call into question the work and reputation of engineers responsible for work related to these products as well as Google's own reputation, this District's interest in this case (factor 4) is significant. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (holding that "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near th[e] district and who presumably conduct business in that community"). In light of Google's significant connections to its home district, its choice of bringing this declaratory judgment action in this District—i.e., factor 3—should also weigh heavily in favor of keeping the case in this District.

For at least these reasons, the Court should find that the forum shopping exception to the first-to-file rule applies and that this case should proceed without delay.

**C.      If The Court Decides To Apply The First-To-File Rule, The Court Should Stay This Case Pending The Resolution Of The Venue Motions In Texas**

If the Court decides not to apply the forum shopping exception to the first-to-file rule, Google respectfully submits that the Court should stay this case instead of dismiss it. Courts may exercise their discretion to stay the case pending the competing forum's determination of the § 1404(a) factors in the context of a motion to dismiss for improper venue and/or a motion to transfer. *See e.g.*, *EMC Corp v. Bright Response, LLC*, No. 12-cv-2841, 2012 WL 4097707, at *5 (N.D. Cal. Sept. 17, 2012). Briefing on Google's Motion to Dismiss for Improper Venue and Google's Motion

to Transfer Under § 1404 has closed and those motions will soon be resolved. In the event Google is successful in those motions, staying this case will have result in no prejudice to SEVEN. And a stay, rather than a dismissal, will act as an appropriate safeguard against SEVEN voluntarily dismissing its claims in the Texas action, only to refile in an improper or inconvenient venue. Indeed, many courts in this and other districts have held that when "there is a pending motion to dismiss" in the earlier filed suit, "it would be inappropriate to dismiss" the later filed case. *Lawyers Funding Grp., LLC v. Harris,* No. 15-cv-4059, 2015 WL 13298145, at *13 (C.D. Cal. Sept. 18, 2015); *see, e.g.*, *Amerifreight, Inc. v. Belacon Pallet Services, LLC*, No. 15-cv-5607, 2015 WL 13037420, at *6 (C.D. Cal. Nov. 10, 2014); *Thomas & Betts Corp. v. Robroy Indus., Inc.*, No. 15-cv-4150, 2015 WL 4718892, at *6 (C.D. Cal. Aug. 6, 2016); *Intuitive Surgical, Inc. v. Cal. Inst. of Tech,*̦ No. 07-cv-63, 2007 WL 1150787, at *3 (N.D. Cal. Apr. 18, 2007); *EMC Corp.*, 2012 WL 4097707, at *5; *British Telecomms. PLC v. McDonnell Douglas Corp.*, No. 93-cv-677, 1993 WL 149860, at *5 (N.D. Cal. May 3, 1993); *Genentech, Inc. v. GlaxoSmithKline LLC*, No. 10-cv-4255, 2010 WL 4923954, at *3-4 (N.D. Cal. Dec. 1, 2010). In *Alltrade*, the Ninth Circuit even reversed the district court's dismissal of a second-filed case under the first-to-file rule because "the first-filed action present[ed] a likelihood of dismissal." *Alltrade*, 946 F.2d at 628. Under such circumstances, "the second-filed suit should be stayed." *Id.* And such procedures have worked with success in prior cases in this District and others. *See e.g., Google LLC v. Eolas Technologies Inc.*, No. 15-cv-5446, Dkt. 73 (N.D. Cal. June 16, 2016) (granting stay of the case in lieu of dismissal pending resolution of (ultimately successful) venue challenge in Eastern District of Texas action).

# **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court deny SEVEN's Renewed Motion to Dismiss.

DATED: November 29, 2017                Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Sean S. Pak*
    Sean S. Pak
    Brian E. Mack
    *Attorneys for Google LLC*